UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James E. Pietrangelo, II,    :
            Plaintiff,       :
                             :
      v.                     :        File No. 2:06-CV-170
                             :
United States Department     :
of the Army,                 :
            Defendant.        :

OPINION AND ORDER
(Papers 4, 9, 10, 18 and 20)

Plaintiff James Pietrangelo, proceeding *pro se*,
brings this action pursuant to 5 U.S.C. § 552 of the
Freedom of Information Act ("FOIA").  Pietrangelo has
submitted a FOIA request to the defendant, the United
States Department of the Army ("Army"), asking for
records relevant to the issuance of Bronze Stars during
Operation Iraqi Freedom.  Pietrangelo allegedly seeks
these records in order to investigate and publicize
evidence of military corruption.  The Army has agreed to
produce the requested documents, but only upon payment of
its duplication costs.

This is Pietrangelo's second lawsuit regarding his
FOIA request.  His first suit was dismissed without
prejudice for failure to exhaust administrative remedies.
See Pietrangelo v. Army, 2:04-CV-44 ("*Pietrangelo I*").

In this second action, Pietrangelo is contesting the
Army's refusal to fully waive the fees for duplication.
He also asks the Court to find that the Army has violated
several FOIA-mandated time deadlines, that these
violations evidence a pattern or practice, and that Army
personnel have acted arbitrarily, capriciously and in bad
faith.  In addition to injunctive and declaratory relief,
Pietrangelo is seeking reimbursement of his costs and
attorney's fees for both lawsuits.

Both parties have moved for summary judgment.  The
Army has also moved to dismiss, arguing that the case is
moot because Pietrangelo previously agreed to pay fees in
excess of its current cost estimate.  For the reasons set
forth below, the Army's motion to dismiss is DENIED,
Pietrangelo's motion for summary judgment is GRANTED in
part and DENIED in part, and the Army's motion for
summary judgment is GRANTED in part and DENIED in part.

<u>Factual Background</u>

On December 29, 2003, Pietrangelo allegedly hand-
delivered to the Army an undated FOIA request.  His FOIA
request stated, in relevant part:

2

> I request a copy of all CFLCC[1] records
> (including paper, digital, and email) pertaining
> to Bronze Stars awarded during or for Operation
> IRAQI FREEDOM.  This includes but is not limited
> to all CFLCC-C1 records indicating Bronze Star
> awards by category such as rank or section,
> individual Bronze Star award nominations and
> citations, CFLCC-subordinate-unit Bronze Stars,
> and records regarding CFLCC's Bronze Star
> policy.
>
> I am an individual seeking these records for
> personal use and not for a commercial use.  I am
> willing to pay fees for this request up to a
> maximum of $1,000.

(Paper 11, Administrative Record at 4).  The Army's
response was processed by Robin Pierce, a civilian FOIA
officer.  Pierce was on vacation when Pietrangelo
submitted his request, and is thus unable to confirm that
the request was received prior to her return on January
5, 2004.  (Paper 12, Pierce Aff. at ¶3).  In an affidavit
submitted in *Pietrangelo I*, and again here, Pierce
explains that on or about January 12, 2004 she "tasked
out" the request to the Command's "C1" personnel office.
Id. at ¶ 4.  On January 21, 2004, she received responsive
documents from that office in the form of "several
quarterly reports showing the number of Bronze Stars
awarded and CFLCC's award policy letter."  Id. at ¶ 5.

---

[1]  "CFLCC" stands for Coalition Forces Land Component Command.

3

The personnel office also informed Pierce that the remaining responsive documents should be withheld "pursuant to FOIA Exemption 6," and that, in any event, the administrative costs of producing such documents was prohibitive.  Id. at ¶ 6.

On or about January 23, 2004, Pierce prepared her response to Pietrangelo and forwarded the proposed response to the Staff Judge Advocate's office for review. The legal review took over a month to complete. Ultimately, the Judge Advocate's office informed Pierce that she could release the quarterly reports and the policy letter, but that "the award recommendations and citations could be withheld pursuant to FOIA Exemptions 5 and 6, respectively."  Id. at ¶ 7.

On February 27, 2004, Pierce responded to Pietrangelo by letter, sent under the signature of Lieutenant Colonel Roderick Hutchinson.  The letter included the quarterly reports and policy letter, and informed Pietrangelo that additional information could be publicly obtained from a military website.  The letter also informed Pietrangelo that certain documents were being withheld, and that he could appeal the "non-

4

release" to the Secretary of the Army within 60 days.
(Paper 11 at 17-18).

Pietrangelo filed his complaint in *Pietrangelo I* on
February 24, 2004, three days before the
Pierce/Hutchinson letter was sent.  The complaint
alleged, *inter alia*, that the Army had not responded to
Pietrangelo's request within 20 workdays as required by
FOIA, and that he was thus entitled to the requested
documents.  After the Army received notification of the
lawsuit and, as Pierce explains in her affidavit,
"[a]fter further review of this FOIA action, it was
determined that the 'individual Bronze Star award
nominations and citations' requested by plaintiff" could
be released "in part, subject to redactions under FOIA
Exemptions 5 and 6."  (Paper 12 at ¶ 10).  Pierce
subsequently asked the Command's personnel office to
prepare a cost estimate for processing the remainder of
Pietrangelo's FIOA request.  The personnel office
determined that

> due to the number of personnel records
> containing responsive documents (14,260) and the
> locations of those files (Kuwait, Iraq and
> Atlanta, Georgia), the cost estimates would be
> either $51,119.00 for the release of just the
> one page citation from each responsive personnel

5

> record or $68,350.00 for the release of the one
> page citation and the supporting four page award
> recommendation document from each responsive
> record.

Id. at ¶ 11.  On April 2, 2004, the Army informed

Pietrangelo of its cost estimates, and explained that if

he wanted the Army to proceed with his request, he should

send a check made payable to the U.S. Treasury

Department.  "Your FOIA request will be considered

closed, unless this office receives a response letter

from you."  (Paper 11 at 33-34).

    Pietrangelo did not immediately appeal the Army's

cost determination.  Instead, he continued his litigation

in *Pietrangelo I* and urged the Court to take

jurisdiction.  When the Court dismissed the case without

prejudice for failure to exhaust administrative remedies,

Pietrangelo appealed to the Second Circuit.  On November

14, 2005, the Second Circuit affirmed the Court's

dismissal.  Pietrangelo v. U.S. (Dep't of Army), 155 Fed.

Appx. 526 (2d Cir. 2005).

    On November 17, 2005, Pietrangelo served the Army

with a written request for a fee waiver.  His request

stated, in part:

    This is a reiteration of my previous request to

6

you under the Freedom of Information Act (5
U.S.C. § 552) for documents pertaining to
CFLCC/ARCENT/TUSA's Bronze Star award policy, as
well as a request for a fee waiver/exemption in
response to your April 2, 2004 letter.

I request a copy of all CFLCC/ARCENT/TUSA
records of whatever and in whatever form
pertaining to Bronze Stars awarded during the
period March 2003-March 2004 by
CFLCC/ARCENT/TUSA itself or by any subordinate
but organic units . . . .

I am an individual seeking these records in the
public interest and not for any personal or
commercial gain.  As was explained in the case
Pietrangelo v. U.S. Army which we have been
litigating, the documents I am seeking will
demonstrate that you had a corrupt Bronze Star
award policy by which numerous individuals . . .
were wrongfully denied Bronze Stars, while
numerous other individuals were wrongfully
awarded Bronze Stars . . . .  I intend to
provide the analysis and the underlying record
information to the media, including the Army
Times . . . .  I intend to use the information
obtained from the records to expose your corrupt
award policy on a public affairs news show
called "Investigative Journalism" which I will
be regularly broadcasting on Vermont's public
access channel by the time you respond to this
request.  I therefore qualify, as a
representative of the news media, for an
exemption of all fees.

(Paper 11 at 39-40).  Pietrangelo's November 17, 2005

letter also alleged that the Army had inflated its

duplication fees, and that the "fee calculation includes

more records than requested."  Id. at 40.

The Army contends that this "reiterated" request was

7

the first time that Pietrangelo had included a limitation
on either the time period (March 2003 - March 2004) or
the specific units involved.  On January 6, 2006, the
Army sent Pietrangelo an "interim response" informing him
that his request had been received on January 3, 2006 and
would be "processed as quickly as possible . . . .  The
actual processing time for your request will depend on
its complexity, whether it involves sensitive records,
voluminous records, extensive searches, consultation
among DoD components or other agencies."  Id. at 42.  On
March 21, 2006, an internal Army memorandum stated that
the search and review fees would be waived based upon
Pietrangelo's "representative of the media status."  Id.
at 48.  Duplication fees, however, would not be waived,
and the fees for duplicating 71,200 pages was $10,680.
Id.

     It appears from the record that this fee estimate
for duplication was based upon Pietrangelo's initial
request in 2003, and not upon the arguably more specific
request set forth in his November 17, 2005 letter.  The
Army informed Pietrangelo of its decision in a letter
dated March 29, 2006.  The Army also restated its

position that "because the fees exceed $250 and you have
no payment history, payment is required prior to release
of the documents." <u>Id.</u> at 56.

On April 7, 2006, Pietrangelo filed an
administrative appeal of the fee-waiver determination.
Pietrangelo argued that the disclosure of the requested
records "'is in the public interest because it is likely
to contribute significantly to the public understanding
or activities of the government . . .'" and thus required
a complete waiver of fees. <u>Id.</u> at 59 (quoting 5 U.S.C. §
552(a)(4)(A)(iii)). He also claimed that the Army's
calculation of the number of documents was inflated, and
referenced the limitation in his November 17, 2005
letter. <u>Id.</u> at 60. "I have sought only Bronze Star
awards and awards policy records related documents,
including documents relating to my related IG complaint,
as of the date of my original FOIA request – December 29,
2003 – and as limited in my November 17, 2005 letter."
<u>Id.</u>

On May 19, 2006, the Army denied Pietrangelo's
appeal. "[The statute] does not require a complete fee-
waiver as you have claimed. Upon reconsideration of this

9

office we will not reduce the fee any further." Id. at
62.  Pietrangelo filed suit in the current case on August
25, 2006.

Notwithstanding its prior responses, the Army
conducted an additional review of responsive documents
for the time period and units set forth in Pietrangelo's
letter of November 17, 2005, and concluded that the total
fees for duplication would be $363.00.  Id. at 65.  The
results of this additional review were communicated to
Pietrangelo in a letter dated December 27, 2006.

> This response is to your 17 November 2005
> request under the Freedom of Information Act
> (FOIA) requesting exemption from all fees.  The
> previous fee estimate decisions were not
> erroneous.  All previous fee decisions were
> based on the fees of your previous requests and
> your reiteration of the 17 November 2005
> request.
>
> After further review, your initial request in
> November 2005 and your fee waiver appeal appear
> to have been confusing.  Your November 2005 fee
> waiver request stated that it was both a
> reiteration of your initial request (which was
> used to calculate fees at issue in your
> request), and, simultaneously, defined your
> request differently (both restricting units
> involved and seeking records between March 2003
> and March 2004).  Your April 2006 fee waiver
> appeal referenced for the first time another
> mid-request correction seeking records related
> to an Inspector General inquiry and mentioned
> that you only sought records related to through
> December 2003.

10

. . .

> A search and review has been conducted of Bronze
> Stars awarded to CFLCC and its organic units
> during the period March 03 to March 04 and the
> total estimate cost for the reproduction of the
> Bronze Stars awarded during the period noted are
> a total of $363.00.

Id. at 64 (parentheticals in original).[2]  The letter
further advised Pietrangelo that he was being given 30
days to remit the required fees, and that he could appeal
the fee determination within 60 days.  Id. at 66.  There
is no record evidence that Pietrangelo has either paid
the $363.00 or appealed the new fee determination.

<u>Discussion</u>

I.  <u>Motion to Dismiss</u>

The Army has moved to dismiss for lack of subject
matter jurisdiction, arguing that the case is moot.
Specifically, the Army contends that Pietrangelo
initially offered to pay up to $1,000 in fees, that its
latest cost estimate is below that number, and that there

_____

[2]  Pietrangelo contends that because Operation Iraqi Freedom
did not begin until March, 2003, and given that he made his
initial FOIA request in December, 2003, the Army should not
have been confused about the scope of that request.  (Paper
19-1 at 12).  He concedes, however, that his first request
"was admittedly somewhat less than completely unambiguous."
Id. at 8.

is, therefore, "no present controversy . . . ."  (Paper
10-1 at 9).  Pietrangelo responds that he is now fighting
for a total fee waiver due to the government's bad faith
conduct in response to his request, and that his case
involves more than just the fee issue.

"A case becomes moot when interim relief or events
have eradicated the effects of the defendant's act or
omission, and there is no reasonable expectation that the
alleged violation will recur."  <u>Irish Lesbian and Gay
Org. v. Giuliani</u>, 143 F.3d 638, 647 (2d Cir. 1998).  In
this case, the effect of the Army's alleged misconduct is
the non-production of documents.  With respect to that
non-production, controversies remain as to the propriety
of charging duplication fees, the extent of those fees,
and the Army's conduct in the course of responding to
Pietrangelo's requests.  Accordingly, this case is not
moot and the Army's motion to dismiss is DENIED.

II.  <u>Summary Judgment Standard</u>

Summary judgment should be granted when "there is no
genuine issue as to any material fact, and . . . the
moving party is entitled to a judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  This rule places the

initial burden on the moving party to identify "those
portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrate
the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)
(quoting Fed. R. Civ. P. 56(c)).  When a motion for
summary judgment is made and so supported, the nonmoving
party "must set forth specific facts showing that there
is a genuine issue for trial."  Fed. R. Civ. P. 56(e).
"Where the record taken as a whole could not lead to a
rational trier of fact to find for the non-moving party,
there is no 'genuine issue for trial.'"  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986) (quoting First Nat. Bank of Ariz. v. Cities Serv.
Co., 391 U.S. 253, 289 ( 1968)).

   "A fact is 'material' for these purposes if it
'might affect the outcome of the suit under the governing
law,'" and [a]n issue of fact is 'genuine' if 'the
evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'"  Goldberg v.
Cablevision Sys. Corp., 261 F.3d 318, 324 (2d Cir. 2001)

(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.  It is not the court's function at summary judgment to make credibility determinations, weigh evidence, or draw inferences from the facts.  <u>Id.</u>

In this case, the parties have each moved for summary judgment on the issue of whether the Army's denial of a fee waiver was proper.  The parties also dispute whether the Army acted inappropriately in response to Pietrangelo's FOIA requests, and whether the evidence shows a pattern or practice of unlawful behavior.  Finally, the parties dispute whether Pietrangelo is entitled to costs and/or attorney's fees for his two FOIA cases.

III.  <u>Fee Waiver</u>

FOIA allows agencies to charge reasonable fees for document search and duplication costs.  5 U.S.C. § 552(a)(4)(A).  The fees must be limited to duplication costs when the request is made for the purpose of

14

"scholarly or scientific research" or by "a representative of the news media."  5 U.S.C. § 552(a)(4)(A)(ii).  Duplication fees should be further reduced or waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  This Court reviews the Army's decision *de novo*, and its "review of the matter shall be limited to the record before the agency."  5 U.S.C. § 552(a)(4)(A)(vii); see also Carney v. United States Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994).  Pietrangelo bears the burden of demonstrating his entitlement to a complete fee waiver.  Carney, 19 F.3d at 814.

The Army concedes that Pietrangelo is not pursuing information for commercial purposes, and has allowed him to proceed as a representative of the media. Representatives of the media enjoy an explicit exemption from the commercial interest portion of the statute.  See 5 U.S.C. § 552(a)(4)(A)(ii)(II).  Consequently, the only question before the Court is whether the disclosure of

the requested information is in the public interest, thus entitling Pietrangelo a reduction or waiver of duplication fees.

The Army has promulgated regulations that establish guidelines for determining when fees should be waived or reduced.  While the Army's interpretation of FOIA must be reviewed *de novo*, its interpretation of its own regulations is entitled to "at least some deference." Media Access Project v. F.C.C., 883 F.2d 1063, 1071 (D.C. Cir. 1989).  Pietrangelo has not objected to the application of the Army's regulations in this case.

When determining whether a FOIA request is in the public interest, the Army first considers the subject of the request.  (Paper 11 at 50, Army Reg. Ch. 6-103.c.(1)(i)).  "Components should analyze whether the subject matter of the request involves issues which will significantly contribute to the public understanding of the operations or activities of the Department of Defense." Id.  Here, the subject matter of the request pertains to the awarding of Bronze Stars.  Pietrangelo states that he is seeking these records in order to determine whether Bronze Stars were issued appropriately.

Once he has completed his analysis, he plans to disseminate his findings through the press and on a local access television show.

The Army submits that Pietrangelo's request is personal, and not public, in nature.  In support of this argument, the Army reads the request as limited to a three-month period: from December 29, 2003 to March 2004.  "Based solely on the record before the Army, this time limitation indicates that Pietrangelo's subject is narrow and personal."  (Paper 10-1 at 13).  The Court finds, however, that the Army has misinterpreted the scope of Pietrangelo's request.

Pietrangelo issued his first FIOA request on December 29, 2003, asking for all Bronze Star records "during or for" Operation Iraqi Freedom.  As noted above, Pietrangelo informs the Court that Operation Iraqi Freedom commenced in March, 2003.  In his letter dated November 17, 2005, Pietrangelo altered the time period for the request to March 2003 – March 2004, thereby extending the end date beyond the date of his initial request in December 2003.

In his appeal on the fee waiver issue, Pietrangelo

stated that he had initially sought documents "as of the date of my original FOIA request – December 29, 2003 – and as limited in my November 17, 2005." The Army appears to read "as of the date of my original FOIA request" as a new starting date. The appeal letter is admittedly unclear. However, the Court finds that the only date limitation in the November 17, 2005 letter was the new end date of March 2004. This reading is supported by the Army's latest fee calculation, which is based upon the March 2003 – March 2004 time period. The Army's current reading of December 29, 2003 as a start date for document collection is misplaced.

The Army further contends that Pietrangelo has narrowed his request to his own unit and to individuals whom he has known personally. Pietrangelo initially requested all CFLCC records pertaining to Bronze Stars awarded during Operation Iraqi Freedom. (Paper 11 at 39). In his November 17, 2005 letter, he stated that he was requesting "documents pertaining to CFLCC/ARCENT/TUSA's Bronze Star award policy . . . ." Id. at 39. Pietrangelo informs the Court that ARCENT is the abbreviation for Army Central Command, while TUSA

18

stands for Third United States Army.  (Paper 19-1 at 17,
n.10).  There is no evidence in the record about the size
of either the Central Command or the Third Army.  With
respect to individual documents or persons, Pietrangelo's
administrative appeal letter states that his request
includes "my original IG complaint," while his November
17, 2005 letter references one officer by name.

References to individual documents within a broader
FOIA request do not render the request "personal."
Indeed, the scope of Pietrangleo's request appears to be
go well beyond his personal service experience.  In
trying to clarify his request, Pietrangelo explained to
the Army that he was seeking documents pertaining to
"CFLCC/ARCENT/TUSA itself or by any subordinate but
organic units . . . .  By 'subordinate but organic units'
I [mean] . . . intelligence, communication, and theater
support commands in Kuwait, which directly supported
CFLCC/ARCENT/USA during the relevant time period."  Given
the inclusion of these various support entities, and
considering the size of the Army's estimates of the
documents involved in Pietrangelo's request, the
administrative record does not support the Army's

contention that the request is "extremely limited in time and scope" and, therefore, merely personal. (Paper 14 at 14). Accordingly, the Court finds that the subject matter of Pietrangelo's request is public in nature.

The next factor to be considered is the informative value of the information to be disclosed. (Paper 11 at 50, Army Reg. Ch. 6-103.c.(1)(ii)). "This factor requires a close analysis of the substantive contents of a record, or portion of the record, to determine whether disclosure is meaningful, and shall inform the public on the operations or activities of the Department of Defense." Id. The Army submits that at the time of Pietrangelo's request, it maintained a website with "comprehensive summaries that listed awards by type of award, rank of recipient, and by type of action meriting the award." (Paper 10-1 at 14). The Army further argues that Pietrangelo's request is too narrow to provide a meaningful understanding of its operations or activities. Id. at 15.

The website link referenced by the Army is cited in the administrative record, but the contents of that link are not currently before the Court. In his responsive

20

memorandum, Pietrangelo explains that the website does not include either the recipient's name or "a specific description of the individual's conduct (the 'citation') that led to the award or recommendation (thus information that Plaintiff is seeking), beyond designating it simply as 'valor' versus 'achievement' versus 'service' . . . ." (Paper 19-2 at 2-3) (parentheticals in original). Pietrangelo contends that without this information, the website is "useless to Plaintiff in exposing the specific corruption he seeks to expose . . . ." Id. at 3.

The Court agrees that, if the Army's website is as limited as Pietrangelo suggests (a point that the Army has not disputed), it would not be a useful tool for performing a substantive evaluation of Bronze Star awards. Moreover, as discussed above, the Court does not accept the Army's characterization of Pietrangelo's request as "personalized and limited." Id. Pietrangelo is seeking records with respect to conduct within the Third Army. If his investigation bears fruit, it will likely add to the public's understanding of operations within that significant subset of the Department of Defense. The Court therefore finds that Pietrangelo has

satisfied the "informative value" factor set forth in the Army's regulations.

The third factor for consideration is whether the disclosure is likely to contribute to the understanding of the subject by the general public.  (Paper 11 at 50, Army Reg. Ch. 6-103.c.(1)(iii)).  "The key element in determining the applicability of this factor is whether disclosure will inform, or have the potential to inform the public, rather than simply the individual requester or small segment of interested persons."  Id.  This is perhaps Pietrangelo's most difficult hurdle, as the Army requires consideration of whether the "requester has the capability and intention to disseminate the information to the public.  Mere assertions of plans . . . are insufficient without demonstrating the capacity to further disclose the information in a manner which will be informative to the general public."  Id.  The Second Circuit has determined that the requester need not show an ability to disseminate information to "a broad cross-section of the public."  Carney, 19 F.3d at 814.  "The relevant inquiry, as we see it, is whether the requester will disseminate the disclosed records to a reasonably

22

broad audience of persons interested in the subject."
Id. at 815.

Although the Army has granted Pietrangelo status a
representative of the news media, he is not a media
professional.  Nonetheless, as the Carney decision
suggests, FOIA does not require that the requester of
information work in media.  Pietrangelo states in his fee
waiver request that he intends "to provide the analysis
and the underlying record information to the media,
including the Army Times, just as information relating to
the Pat Tillman affair was provided to the media."
(Paper 11 at 39-40).  He further states that he will "use
the information obtained from the records to expose your
corrupt award policy on a public affairs new show called
'Investigative Journalism' which I will be regularly
broadcasting on Vermont's public access channel . . . ."
Id. at 40.  The Army contends that Pietrangelo's
conclusory statements are insufficient.

Courts have held that FOIA's fee-waiver provision
generally should be "'liberally construed in favor of
waivers for noncommercial requesters.'"  Judicial Watch,
Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003)

(quoting 132 Cong. Rec. 27,190 (1986) (statement of Sen. Leahy)). Requests must be made with "reasonable specificity" and must be "based on more than conclusory allegations." Rossotti, 326 F.3d at 1312. In Larsen v. CIA, 843 F.2d 1481 (D.C. Cir. 1988), the requester was denied a fee waiver because he failed to identify either the newspaper to which he planned to release the requested information or his contacts with major newspaper companies.[3] In contrast, the plaintiff in Rossotti was ruled to be entitled to a fee waiver where it had identified multiple ways in which it communicates with the public. 326 F.3d at 1313. Similarly, a group entitled "Physicians Committee for Responsible Medicine" was recently allowed a fee waiver where it demonstrated its ability "to disseminate the requested information among the public through the publication of its free quarterly newsletter that is received by its 120,000 person membership, as well as through its intention to

---

[3] In response to the CIA's motion for summary judgment, Larsen submitted a letter from an editor at the Washington Post expressing an interest in the requested material. Larsen, 843 F.2d at 1482. In his response to the Army's motion for summary judgment, Pietrangelo has offered a similar communication from an editor at the Army Times. (Paper 19-5). This correspondence is not a part of the administrative record.

24

send out press releases to the 'entire media spectrum.'" <u>Physicians Comm. for Responsible Med. v. Dep't of Health and Human Services</u>, 2007 WL 883625, at *4 (D.D.C. March 26, 2007).

Pietrangelo's request for a fee waiver was more specific than that presented in <u>Larsen</u>, yet less compelling than that of the plaintiff (Judicial Watch) in <u>Rossotti</u>.  At the very least, Pietrangelo has satisfied the requirement of "reasonable specificity" set forth in <u>Rossotti</u>, 326 F.3d at 1312, having identified the Army Times and a local access television program as his two primary outlets for dissemination.  Also weighing in Pietrangelo's favor is the fact that the Army has recognized him as a representative of the media.  "The legislative history of the FOIA fee waiver provision indicates 'a special solicitude for journalists.'" <u>Larson</u>, 843 F.2d at 1483 n.5 (quoting <u>Nat'l Treasury Emp. Union v. Griffin</u>, 811 F.2d 644, 649 (D.C. Cir. 1987)). "This special treatment stems from the notion that furnishing journalists with information will benefit primarily the public."  <u>Id.</u>

For reasons discussed above, it appears to the Court

that Pietrangelo is requesting documents primarily for
public use.  Moreover, the Army has recognized
Pietrangelo's media credentials, and Pietrangelo has set
forth plans for disseminating information with reasonable
specificity.  The Court therefore concludes that, if the
requested documents support Pietrangelo's theory of
corruption, his work will contribute to the public
understanding on the issue of Bronze Star awards.

The final factor for consideration under the Army's
regulations is the significance of the contribution to
public understanding.  (Paper 11 at 50, Army Reg. Ch. 6-
103.c.(1)(iv)).  "In applying this factor, the Component
must differentiate the relative significance or impact of
the disclosure against the current level of public
knowledge, or understanding which exists before the
disclosure."  Id.  In its motion for summary judgment,
the Army argues that "[t]he public is well aware that
systems of rewards and recognitions result in disgruntled
persons who were overlooked," and that Pietrangelo's
documents request is too narrow to reveal significant
information: "It is just a small piece of a much larger
pie."  (Paper 10-1 at 17).  In order for the Court to

accept these arguments, it must find (1) that
Pietrangelo's request is nothing more than an effort to
show that he himself should have received a Bronze Star,
and (2) that his request is narrow.  The administrative
record does not support such findings.  As discussed
previously, Pietrangelo's request appears to go well
beyond his own personal experiences.  Furthermore, he has
clearly stated his intention to broadcast findings of
corruption in an effort to enhance public understanding.

In response to the Army's motion for summary
judgment, Pietrangelo submits that his goal is not to
attack the integrity of Army conduct generally, but
rather to question only the awarding of Bronze Stars in
the Third Army.  (Paper 19-2 at 3).  Given this goal, it
is appropriate that his request be limited to that
portion of Army operations.  If the requested documents
prove Pietrangelo's theories of corruption, his
dissemination of information will almost certainly
enhance public understanding about activities in that
subset of operations.

In sum, the Court finds that Pietrangelo has
satisfied the requirements for a fee waiver.  His

document request, as set forth in his fee waiver letter
of November 17, 2005, is not so limited as to be merely
personal in nature.  If his theories are substantiated
and his plans for dissemination are carried out, his
findings will likely contribute to the understanding of
how the Third Army awarded Bronze Stars during the
relevant time period.  Consequently, Pietrangelo's motion
for summary judgment on the fee waiver issue is GRANTED,
and the Army's motion for summary judgment on this issue
is DENIED.

IV.  <u>Pattern or Practice of FOIA Violations</u>

    In addition to his claim to a fee waiver,
Pietrangelo argues that the Army has engaged in a
"practice/policy . . . of not complying with federal law,
including FOIA."  (Paper 1-1 at 2).  His claim centers on
the Army's alleged failures to respond to his requests
within the time limits set forth under FOIA.  In response
to Pietrangelo's claims, the Army contends that it "has
not engaged in any onerous, illicit or bad faith conduct
that deserves declaratory relief or an injunction."
(Paper 10-1 at 27).[4]

_____

[4]  FOIA recognizes that agencies may take longer than the
statutorily imposed time-limits when "exceptional

As to the pattern or practice claims specifically, the parties agree that the standard for a pattern or practice requires circumstances such as "'systemic agency abuse or bad faith'" or "'prolonged delay or unacceptably onerous opportunities for viewing disclosed information . . . .'" (Paper 10-1 at 23) (citing cases, including <u>Payne v. Enterprises, Inc. v. United States</u>, 837 F.2d 486, 491 (D.C. Cir. 1988)); (Paper 19-3 at 12-13).  In this case, the Court finds that the Army's actions have not risen to this level of either misconduct or delay.

---

circumstances exist and . . . the agency is exercising due diligence in responding to the request."  5 U.S.C. 552(a)(6)(C)(i).  "The leading case on enforcement of time limits is <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976)."  <u>Gilmore v. U.S. Dep't of Energy</u>, 4 F. Supp. 2d 912, 925 (N.D. Cal. 1998).  In <u>Open America</u>, the District of Columbia found that exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests."  547 F.2d at 616; <u>see also</u> <u>Center For Biological Diversity v. Gutierrez</u>, 451 F. Supp. 2d 57, 70 (D.D.C. 2006).  "The 'exceptional circumstances' exception has been applied where a single request is unusually large or complicated."  <u>Ray v. U.S. Dep't of Justice, I.N.S.</u>, 770 F. Supp. 1544, 1549 (S.D. Fla. 1990) (citing <u>Reagan Bush Committee v. Federal Election Commission</u>, 525 F. Supp. 1330 (D.D.C. 1981)).  To date, the Army not applied to the Court for extra time due to exceptional circumstances, and had not argued that its delays were related to either the volume of requests generally or the complexity of Pietrangelo's request.  Therefore, the Court simply notes that such exceptions may be applicable.

FOIA generally requires that agencies respond to requests within 20 working days.  5 U.S.C. § 552(a)(6)(A)(I).  Pietrangelo's first FOIA request was received on or about December 29, 2003.  Pierce's affidavit explains that she did not review the request until she returned from vacation on January 5, 2004.  On January 12, 2004, the assistant chief of staff to the "C1" directed action on the request.  (Paper 11 at 6).  On January 21, 2004, "C1" submitted its response to Pierce, which she received on January 22, 2004.  Id. at 12; (Paper 12 at 3).  On January 23, 2004, Pierce forwarded her proposed response to the Staff Judge Advocate's office for legal review.  (Paper 12 at 3).  The legal review was completed and communicated to Pierce on February 26, 2004, and the response letter was sent the next day.  (Paper 11 at 15-23).

The Army concedes that its response was 22 workdays late.  Although there was a violation of the FOIA deadline, and no judicial extension or stay was requested as contemplated under 5 U.S.C. § 552(a)(6), there is no indication of either bad faith or prolonged delay.  It appears from the record that the delay was due primarily

to the extended time for a legal review.  Once that
review was completed, Pierce moved quickly in sending
Pietrangelo his response.  These facts, alone, do not
support a finding in Pietrangelo's favor in his pattern
or practice claim.  Cf. Gutierrez, 451 F. Supp. 2d at 69-
70 (late FOIA responses did not constitute pattern or
practice).[5]

    Pietrangelo complains that his request has been the
subject of three years of litigation, and that he still
has not received all of the requested documents.  A
significant portion of this delay, however, was due to
Pietrangelo's failure to either pay the required fees or
exhaust his administrative remedies on the fee waiver
issue.  Indeed, after receiving responses from the Army
in early 2004, he did not request a fee waiver from the
Army until November 17, 2005, after the Second Circuit
had affirmed this Court's dismissal of his prior case
without prejudice.

    Although Pietrangelo's fee waiver request was dated

_____

[5]  As noted above, Gutierrez focused on the volume of
documents being handled by the agency at that time.  Despite
the factual differences, the Gutierrez court's conclusion that
repeated time violations did not constitute a pattern or
practice is persuasive.

November 17, 2005, the Army states that the request was
not received until January 3, 2006.  (Paper 11 at 42);
(Paper 13, Parker Aff. at 2).[6]  On January 6, 2006, the
Army notified Pietrangelo that his request had been
received, had been assigned a case number, and would be
processed "as quickly as possible . . . ."  (Paper 11 at
42).  A legal review of his request and a proposed
response was again undertaken, the results of which were
communicated in an internal memorandum dated February 21,
2006.  According to FOIA officer Janith Parker, this
review "resulted in additional processing," and a second
proposed response was sent to the staff judge advocate on
March 15, 2006.  (Paper 13 at 2).  The decision to grant
Pietrangelo status as a member of the media and to waive
all fees except those for duplication was sent on March
29, 2006.  <u>Id.</u>

     Again, although the Army's response violated the 20-
day deadline set forth in FOIA, the Army's delays do not
evidence either bad faith or prolonged delay.  The Army
drafted and subsequently revised its response after

---

[6]  In the previous litigation, Pietrangelo submitted a mail
receipt showing that his letter was received and signed for by
Army personnel on November 18, 2005.

review by the staff judge advocate, and each draft apparently required legal review.  Given the level of correspondence between the different offices within the Army, it does not appear that the delay was the result of any bad faith efforts.

Pietrangelo appealed the fee waiver issue on April 7, 2006.  The Army denied the appeal in a letter dated May 19, 2006.  (Paper 11 at 62).[7]  The Army again concedes that its response was not within FOIA's 20-day deadline.  Nonetheless, as in the previous delays, the Court sees no evidence of either bad faith or prolonged delay.  Pietrangelo's initial FOIA request in 2004 was very broad and sought documents located in three countries.  He reiterated his requests, not altogether clearly, in 2005, and included a request for a fee waiver.  In response, the Army has granted him status as a member of the news media and has twice made significant reductions in the fees required for production. Notwithstanding the Court's conclusion that Pietrangelo is entitled to a fee waiver, the Court finds that the

---

[7]  In the previous litigation, Pietrangelo produced an envelope showing that this letter was not sent until June 5, 2006.

Army's conduct in this case does not amount to the sort of bad faith conduct, and has not incurred the sorts of prolonged delays, that would entitle Pietrangelo to either declaratory or injunctive relief due to an alleged pattern or practice of behavior.[8]

V.  Attorney's Fees

Although Pietrangelo is proceeding *pro se*, he is seeking attorney's fees for both this case and his previously-dismissed FOIA case.  See 5 U.S.C. § 552(a)(4)(E) (court may assess attorney fees and costs in any case "in which the complainant has substantially prevailed").  Attorney's fees for *pro se* parties are generally barred.  See, e.g., Kay v. Ehrler, 499 U.S. 432, 435 (1991); see also Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983).  Pietrangelo acknowledges the general rule, but argues that the Court may nonetheless award him fees under its inherent powers.  In support of this argument, he cites Pickholtz v. Rainbow Tech, Inc., 284 F.3d 1365, 1378 (Fed. Cir. 2002) for the proposition that attorney's fees may be awarded under the court's

---

[8]  The Court also finds that Pietrangelo is not entitled to discovery on this issue, since the affidavits submitted by the Army are factually adequate and "are accorded a presumption of good faith."  Carney, 19 F.3d at 812.

inherent powers "when there has been: (1) willful disobedience of a court order and (2) conduct that is in bad faith, vexatious, wanton, or for oppressive reasons." The _Pickholtz_ court also found that "[c]onduct of this second type requires an improper intent or purpose that cannot be inferred from mere tardiness _per se_."  284 F.3d at 1378.

Even if the Court were to adopt the _Pickholtz_ standard, its two-part test has not been satisfied. First, there has been no showing of a willful disobedience of a court order.  Second, as discussed above with respect to Pietrangelo's pattern or practice claim, the Court does not find that the Army has conducted itself in bad faith.  Nor has there been any showing of any improper conduct within this litigation specifically.  Moreover, courts have clearly held that attorney's fees are not available to _pro se_ parties in FOIA cases.  _See_, _e.g._, _Burka v. U.S. Dep't of Health and Human Servs._, 142 F.3d 1286, 1288-90 (D.C. Cir. 1998); _Loglia v. Internal Revenue Serv._, 1997 WL 214869, at *2-*3 (S.D.N.Y. Apr. 25, 1997).  Pietrangelo's request for attorney's fees is, therefore, DENIED.

## VI.  Litigation Costs

The fact that a *pro se* plaintiff cannot recover
attorney's fees does not bar him from being awarded his
litigation costs.  See, e.g., Kuzma v. Internal Revenue
Serv., 821 F.2d 930, 934 (2d Cir. 1987).  The FOIA
standard allowing for recovery of reasonable costs "vests
considerable discretion with the district courts . . . ."
Id. at 933; see 5 U.S.C. § 552(a)(4)(E).  In order to be
awarded costs, the plaintiff must demonstrate that he is
"'eligible for' and 'entitled to' such costs."  Loglia,
1997 WL 214869, at *3.[9]

Eligibility requires that the plaintiff
substantially prevail.  5 U.S.C. § 552(a)(4)(E).  A
fundamental issue in this case is Pietrangelo's

──────────────

[9]  Pietrangelo argues that he is entitled to costs for his
previous FOIA case as well.  That case was dismissed without
prejudice.  Among other things, the Court declined to resolve
the fee waiver issue without the Army first reviewing the
issue administratively.  Pietrangelo appealed the Court's
decision, was unsuccessful, and subsequently proceeded with
the administrative fee waiver process.  Given these facts, it
is clear that Pietrangelo did not substantially prevail in the
first action.  See Oil, Chemical and Atomic Workers Int'l
Union v. Dep't of Energy, 288 F.3d 452, 456–57 (D.C. Cir.
2002) (to qualify for fees under FOIA, plaintiff must have
been awarded some relief by the court); McSheffrey v. Exec.
Office for United States Attorneys, 2003 WL 21538054, at *1
(D.C. Cir. July 2, 2003) (*per curiam*) (applying same test for
award of litigation costs).  Accordingly, and assuming that
costs for that action could be obtained through this case, he
is not entitled to such costs.

entitlement to a waiver of duplication fees.  Also at
issue is his claim that the Army engaged in a pattern or
practice of bad faith conduct.  Pietrangelo has now
succeeded on his claim for a fee waiver, but his pattern
or practice claim lacks merit.  Therefore, although
Pietrangelo has prevailed on some claims, it is not clear
that he has "substantially prevailed" such that an award
of costs is warranted.

Even if the Court were to find that Pietrangelo is
eligible for costs, he is not entitled to such costs.  To
determine whether a litigant is entitled to costs under
FOIA, the Court should weigh: (1) the benefit, if any,
the public has derived from the case; (2) the commercial
benefit to the plaintiff; (3) the nature of the
plaintiff's interest in the records sought; and (4)
whether the Government's withholding of the records had a
reasonable basis in law.  See Anderson v. Secretary of
Health and Human Services, 80 F.3d 1500, 1504 (10th Cir.
1996); Detroit Free Press, Inc. v. Dep't of Justice, 73
F.3d 93, 98 (6th Cir. 1996); Jefferson v. U.S. Dep't of
Justice, 2006 WL 3246402, at *2 (D.D.C. Nov. 7, 2006).

"Probably the most important consideration in

determining entitlement to fees in a FOIA case is the
benefit to the public which is to be derived from the
release of the information sought." <u>Miller v. United
States Dep't of State</u>, 779 F.2d 1378, 1389 (8th Cir.
1985).  In reviewing the legislative discussion of this
factor, it has been noted that Congress "strongly
suggest[ed] that in weighing this factor a court should
take into account the degree of dissemination and likely
public impact that might be expected from a particular
disclosure." <u>Blue v. Bureau of Prisons</u>, 570 F.2d 529,
533 (5th Cir. 1979).  "This goes to the central purpose of
the disclosure act: to assist our citizenry in . . .
making vital political choices." <u>Id.</u> at 533-34.

While the Court has determined that Pietrangelo's
investigation may be of public benefit, it is not clear
that possible corruption in the awarding of Bronze Stars
is a matter of vital political concern.  Moreover,
although Pietrangelo's planned dissemination is
sufficient to entitle him to a waiver of duplication
fees, it is unlikely to rise to the level of public
impact that would justify the government paying his
costs.

38

As to the second factor, there is no evidence or suggestion that the information will be used for commercial benefit.  With respect to the third factor, the nature of Pietrangelo's interest, the scope of his request appears to be primarily public in nature. Nonetheless, as the government suggests, there are elements of Pietrangelo's filings that suggest a private interest as well.  Finally, although the Court disagrees with the Army on the fee waiver issue, the Army's legal position was not entirely unreasonable.  Consequently, the parties shall bear their own costs.

<u>Conclusion</u>

For the reasons set forth above, Pietrangelo's motion for summary judgment (Papers 4) is GRANTED to the extent that he is entitled to a fee waiver, and is otherwise DENIED.   The Army's motion to dismiss (Paper 10) is DENIED.   The Army's motion for summary judgment (Paper 10) is DENIED as to the fee waiver issue, and is otherwise GRANTED.   Pietrangelo's supplemental motion for summary judgment (Paper 20) is DENIED.   The pending motions for leave to exceed the page limit (Papers 9 and 18) are GRANTED, and Pietrangelo's motions for discovery

and a hearing (Paper 4) are DENIED.

Dated at Burlington, in the District of Vermont, this 27th day of June, 2007.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge, United States District Court